**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**ANDREW BELL, ET AL.**                                                                                              **PLAINTIFFS**

**v.**                                                    **NO. 3:04CV00303-WRW**

**AMERICAN GREETINGS CORP.**                                                                              **DEFENDANT**

**ORDER**

Pending are Plaintiffs' Motion for Declaratory Judgment (Doc. No. 38), Motion to Amend Complaint (Doc. No. 40), and Second Motion to Amend Complaint (Doc. No. 48). Defendant has filed a Motion to Dismiss Plaintiffs' Complaint (Doc. No. 44).

For the reasons stated below, Plaintiffs' Motion for Declaratory Judgment is GRANTED. Plaintiffs' Motion to Amend Complaint and Second Motion to Amend Complaint are both DENIED. Defendant's Motion to Dismiss is DENIED as moot. Plaintiffs most recently filed Motion for Order Allowing Plaintiffs' Response to Defendant's Opposition to Plaintiffs' Second Motion to Amend Complaint (Doc. No. 56) is MOOT in light of Plaintiffs' filing their response, regardless of permission (Doc. No. 57).

**I.      History[1]**

Defendant American Greetings Corporation ("Defendant" or "American Greetings") is a foreign corporation organized under the law of the state of Ohio and is qualified to do business in the state of Arkansas. Defendant's principal place of business is located in Osceola, Arkansas.

---

[1]This history is taken from an earlier Order (Doc. No. 23) granting Defendant's Motion for Partial Summary Judgment filed April 27, 2005.

In 2002, Defendant began dismissing a large group of its hourly employees. Roughly 120 employees out of 1,100 were dismissed. Defendant maintains that the dismissals were a result of a legitimate investigation of allegations by the Arkansas Employment Security Division ("AESD") that Defendant's employees improperly claimed unemployment compensation for time periods in which they were working. Plaintiffs, former employees of Defendant, allege that the investigation was a pretext -- a mask for dismissals driven by illegal discrimination on the basis of sex, race, and disability.

All of the original Plaintiffs to this action filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") as required by Title VII. It is undisputed that Plaintiffs identified in Groups II and III of their Complaint filed their own individual charges with the EEOC, alleging in those charges discriminatory discharge on the basis of sex, race, age, and retaliation. It is also undisputed that the EEOC issued a Dismissal and Right to Sue Letter to each Plaintiff in Groups II and III.

In an April 27, 2005 Order, this Court dismissed the sex discrimination claims of Group I Plaintiffs, Plaintiff Michael Fletcher' Title VII claim, and the Title VII and ADEA claims of all Group II and Group III Plaintiffs.

**II.   Analysis**

    **A.   Declaratory Judgment and Motion to Dismiss**

Plaintiffs' counsel, Mr. Larry Steele ("Steele"), has filed a Motion for Declaratory Judgment asking for a determination that Plaintiffs' Complaint is valid despite his being administratively suspended when the original complaint was filed on August 31, 2004. Steele argues that his eventual payment of overdue fees retroactively reinstated his license, effectively validating any legal

work (including the present Complaint) performed during the suspension. Defense counsel responded that the Complaint and all other filings represent acts of the unauthorized practice of law and, are therefore, a nullity. Furthermore, Defendant argues that any future filing of similar claims to be time-barred.

The annual Arkansas law license renewal fee is due and payable no later than March 1 of each year. If an Arkansas attorney does not timely pay this fee, his Arkansas law license is automatically administratively suspended until such time as the annual fee, $175, plus a late fee is paid. Before January 27, 2005, Plaintiffs' counsel, Mr. Larry Steele ("Steele"), last paid his annual license fee on May 2, 2003. Steele's law license was automatically suspended on March 2, 2004, due to nonpayment. Steele's license was reinstated on January 27, 2005, when he paid a total of $435.00 for the years 2004 and 2005.

The "[r]ight to practice law is a privilege granted by the state"[2] and governed by the Arkansas Supreme Court.[3] Since the pertinent Federal Rule refers to the "face of the record upon which the discipline in another jurisdiction is predicated," this Court must first review the Consent Findings and Order[4] ("Consent Findings") made by the Arkansas Supreme Court Committee on Professional Conduct, Panel B. In the Consent Findings, the Committee explicitly stated that while a law license is suspended, the attorney is not eligible to practice law in Arkansas. Nevertheless, after reviewing the fact that Steele had handled at least two appeals before the Arkansas Court of

---

[2]*Sexton v. Ark. Supreme Court Committee on Professional Conduct*, 774 S.W.2d 114, 117 (Ark. 1989).

[3]Amendment 28 to the Arkansas Constitution reads: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."

[4]Doc. No. 45-2.

3

Appeals and one case the Eastern District of Arkansas while his license was suspended,[5] the Committee did not take any further action. Despite the finding that Steele violated Rules 3.4(c), 5.5(a), and 8.4(d) of the Arkansas Model Rules of Professional Conduct, denying his clients "the services of an attorney in good standing and potentially jeopardizing their cases," the Committee opted to simply caution Steele.

Rule II of the Model Federal Rules of Disciplinary Enforcement (the "Federal Rules") requires that an attorney disciplined by another court must show cause why he should not receive the identical discipline in federal court. The identical discipline is to be imposed:

> unless the respondent/attorney demonstrates, or this Court finds, that upon the face of the record upon which the discipline in another jurisdiction is predicated it clearly appears:
> 1. That the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> 2. That there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final conclusion on that subject; or
>
> 3. That the imposition of the same discipline by this Court would result in grave injustice; or
>
> 4. That the misconduct established is deemed by this Court to warrant substantially different discipline.[6]

Steele received a caution - - nothing more. Why should this Court do more than the Arkansas Committee of Professional Conduct would do? In light of such a finding, I am not inclined and will not nullify an entire case that involves numerous Plaintiffs and one which has been pending

---

[5]*Foushee v. Pilgrim's Pride*, No. E-04-161, *Thompson et al. v. Director of Arkansas ESD*, No. E-03-127, *Arkansas State Highway and Transportation Dept., et al.*, No. 3:02CV287GH.

[6]Rule II(D), Federal Rules.

for well over a year now, simply because of nonpayment of a state licensing fee. Moreover, the cases cited by Defendant involved either non-attorneys[7] or attorneys licensed in other jurisdictions acting in violation of local *pro hac vice* regulations[8] and, therefore, do not apply.

Steele is a lawyer in good standing and one that has met the requirements to practice law not only in Arkansas but also in federal court. Accordingly, Plaintiffs' Motion for Declaratory Judgment that the Complaint and any later filings are valid despite Steele's suspended license at the time of filing is GRANTED. In light of this ruling, Defendant's Motion to Dismiss Plaintiffs' Complaint because it is a nullity is DENIED.

**B.     Motions to Amend/Correct Complaint**

On November 2, 2005, Plaintiffs filed their First Motion to Amend Complaint to add seven unidentified plaintiffs, and to add a claim under 42 U.S.C. § 1983 on behalf of all Plaintiffs, including the seven proposed Plaintiffs and the Plaintiffs previously dismissed. The seven proposed Plaintiffs seek to piggyback under 29 U.S.C. § 216(b) individual claims of race, age, or sex discrimination as opt-in plaintiffs.

Defendant filed its Opposition to Plaintiffs' Motion to Amend on November 14, 2005. In its response, Defendant noted that Plaintiffs failed to both identify the seven proposed plaintiffs and to attach a copy of the Proposed Amended Complaint in violation of Local Rule 5.5(e).[9] Defendant

---

[7]*Jones ex rel. Jones v. Correctional Medical Services, Inc.*, 401 F.3d 950 (8th Cir. 2005); *Davenport v. Lee*, 72 S.W.3d 85 (Ark. 2002).

[8]*Preston v. University of Arkansas for Medical Sciences*, 128 S.W.3d 430 (Ark. 2003).

[9]Local Rule 5.5(e) reads: "A party who moves to amend a pleading shall attach a copy of the amendment to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of Court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference. The party amending shall file the original of the amended pleading within five (5) days of the entry of the order granting leave

also pointed out that Plaintiffs' motion was filed well after the already extended deadline to amend the pleadings had passed, and without any attempts for extensions. Defendant further argued that Plaintiffs cannot add parties under 29 U.S.C. § 216(b) because that statute applies to collective actions only. Finally, Defendant averred that Plaintiffs cannot add claims under 42 U.S.C. § 1983 because they were not deprived of a constitutional right under color of state law.

On November 25, 2005, Plaintiffs filed an Amended Complaint and then filed a Second Motion to Amend Complaint on December 9, 2005.[10] Defendant responded on December 27, 2005, reasserting its previously plead defenses. Defendant has offered a plethora of reasons to deny Plaintiffs' motion, specifically arguing that the extreme untimeliness of the filings alone should warrant their denial. For clarity, each of Defendant's arguments will be addressed separately.

Under the liberal amendment policy of Rule 15(a) of the Federal Rules of Civil Procedure, "leave shall be freely given" by the court. The Eighth Circuit has added that "absent a good reason for denial - - such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of amendment–leave to amend should be granted."[11] The Eight Circuit has held that "[d]elay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing the amendment;" and that the "burden of proof of prejudice is on the party opposing the amendment."[12]

---

to amend unless otherwise ordered by the Court."

[10]Plaintiffs sought to add seven additional Plaintiffs in their Second Motion to Amend; however, their Second Amended Complaint add eight Plaintiffs.

[11]*Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989).

[12]*Roberson v. Hayti Police Dept.*, 241 F.3d 992 (8th Cir. 2001).

In addition to timeliness, Defendant points out that five of the eight Plaintiffs sought to be added were allegedly terminated by Defendant for unemployment fraud in 2002 - - the same as the existing Plaintiffs.  Therefore, Defendant argues, that because Plaintiffs have offered no reason that these additional five Plaintiffs were not added sooner, they should be denied admittance.  Defendant maintains that allowing an amendment would force the it to re-depose several of the Plaintiffs and further delay resolution of this case.  I do not think that Defendant has proved prejudice to such degree to warrant denial of the Motion to Amend on that point alone. Moreover, because Plaintiffs have since complied with Local Rule 5.5, I will not deny Plaintiffs' motion for their initial failure to attach a copy of the Amended Complaint to their motion.

Defendant next argues that 29 U.S.C. § 216(b) prevents Plaintiffs from being able to opt-in the present case.  Section 216(b) allows plaintiffs to opt-in to collective actions under the Age Discrimination in Employment Act ("ADEA") and the Fair Labor Standards Act ("FLSA").  These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights.[13]   In an April 27, 2005 Order, I dismissed all class claims; therefore, section 216(b) does not apply to this case because it is not a collective action.  Further, this case does not involve a FLSA claim, and § 216(b) does not allow Plaintiffs to opt-in to a Title VII case.  Finally, because all claims based on sex have been dismissed, there are also no sexual discrimination claims upon which Plaintiffs can piggyback.

Group IV Plaintiffs acknowledge they did not file EEOC charges.  Therefore, to bring Title VII claims, they must piggyback on the Title VII claims of the existing Plaintiffs.  Under the piggybacking rule, the timely filing of an EEOC charge can satisfy the charge obligation of other

---

[13]*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

non-filing plaintiffs only if, "(1) the charge being relied upon is timely and not other defective; and (2) the individual claims of the filing and non-filing plaintiffs arose out of similar discriminatory treatment in the same time frame."[14] After this Court's Order entered April 27, 2005, the only Plaintiffs with remaining Title VII and ADEA claims are Group I Plaintiffs.

Proposed Plaintiffs Willie Hill ("Hill"), Elizabeth Smith ("Smith"), and James Thrasher ("Thrasher") cannot bring Title VII or ADEA claims because their allegations of discriminatory conduct do not arise out of similar discriminatory conduct in the same time frame as the Group I Plaintiffs. Hill alleges he was terminated in January 2001 for insubordination, and he was terminated more than a year earlier than any Group I Plaintiffs. Likewise, Smith and Thrasher admit that they were terminated for conduct unrelated to fraudulent reporting of AESD fraud. Smith alleges she was terminated for calling in sick despite having a doctor's note and Thrasher alleges he was constructively discharged by not being offered enough work and filing requests for vacation pay.

Additionally, Smith is precluded from bringing a sex discrimination claim because this Court has already dismissed all sex discrimination claims in this case. Therefore, there is no sex discrimination claim upon which Smith can piggyback. Finally, Hill cannot bring a § 1981 claim because the statute of limitations has run. Hill was fired on January 15, 2001. Under the four year statute of limitations for § 1981 claims,[15] Hill's claim expired on January 15, 2005. Accordingly, I find that existing case law prevents the proposed Plaintiffs from being able to opt-in on any

---

[14]*Robinson v. Sears, Roebuck & Co.*, 111 F. Supp.2d 1101, 1117 (E.D. Ark. 2000).

[15]*See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 381 (2004).

existing claims, and that the facts pled for proposed Plaintiffs Hill, Smith, and Thrasher warrant a denial of their motion.

With regard to Plaintiffs (proposed, dismissed, and existing) attempts to add a § 1983 cause of action, Plaintiffs allege that their discharge was pretextually based on AESD fraud and thus pursuant to color of state law.  Specifically, Plaintiffs allege that "one or more individuals employed by the Blytheville, Arkansas AESD office conspired with or tacitly participated in Defendant's goal to discharge a large number of black, female, and older employees."[16]

In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.[17]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[18]

Defendant contends that Plaintiffs cannot articulate a deprivation of rights, privileges, or immunities secured by the Constitution or the laws of the United States.  Defendant supports its position by noting that it discharged Plaintiffs for claiming unemployment benefits for periods of time during which they were actually working and that this reason is entirely independent from any action or conduct of the AESD.

---

[16]*See* Second Amended Complaint, p. 47.

[17]*Gentry v. City of Lee's Summit, MO.*, 10 F.3d 1340, 1342 (8th Cir. 1993) (*quoting Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

[18]*West v. Atkins*, 487 U.S. 42, 49 (1988).

Defendant negates Plaintiffs' conspiracy argument by citing Plaintiffs' Proposed Second Amended Complaint, in which they made the following allegations:

> Defendant made a decision to replace certain individual employees. Defendant selected the individuals based on their race, and/or color, and/or sex, and/or age, and/or retaliation. Defendant formed a strategy to hide its discriminatory animus to replace these individuals by providing the employment history of the individuals (which was often false) to the AESD. In addition, Defendant offered a confusing policy of voluntary lay off called "company convenience" which led to reporting errors for AESD benefits. The AESD then determined whether these individuals had committed AESD fraud. Without regard to the determination of fraud having been committed or not by the particular individual, Defendant then terminated the individual. The termination of a particular individual by the Defendant for allegedly having committed AESd fraud was pretextual and simply a scheme or cover for the Defendant's original discriminatory motive of discrimination . . .[19]

Defendant argues the above demonstrates that Defendant did not conspire with the AESD to terminate Plaintiffs.

Further, the Supreme Court has never acknowledged a private right to employment. Moreover, Defendant's decision to discharge employees who claimed unemployment benefits for periods of time when they were working is independent of any action by the AESD. Therefore, I find that Plaintiffs have not proved Defendant was acting under color of state law.

Plaintiffs previously discharged seek to have this Court "revisit their claims based on the new allegations pursuant to 42 U.S.C. § 1983."[20] Claim preclusion, or res judicata, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that

---

[19] Second Amended Complaint, Doc. No. 48-2, p. 40-41 (summary).

[20] Doc. No. 41, p. 2.

were or could have been raised in that action."[21]  Therefore, Plaintiffs previously dismissed will remain so.

Plaintiffs are directed to file an Amended Complaint, written in strict compliance with my findings in both this Order and the April 27, 2005 Order, as Exhibit "A" to today's Order.

In sum, Plaintiffs' Motion for Declaratory Judgment (Doc. No. 38) is GRANTED. Plaintiffs' Motion to Amend Complaint (Doc. No. 40) and Second Motion to Amend Complaint (Doc. No. 48) are DENIED.  Plaintiffs' Motion for Order Allowing Plaintiffs' Response to Defendant's Opposition to Plaintiffs' Second Motion to Amend Complaint (Doc. No. 56) is MOOT. Defendant's Motion to Dismiss Plaintiffs' Complaint (Doc. No. 44) is MOOT.

IT IS SO ORDERED this 10th day of January, 2006

/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE

---

[21]*San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 125 S.Ct. 2491, 2500 (2005).