**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**ANDREW BELL, ET AL.** **PLAINTIFFS**

**v.** **3:04CV00303-WRW**

**AMERICAN GREETINGS CORP.** **DEFENDANT**

**ORDER**

On August 31, 2004, Plaintiff Walter Taylor ("Taylor"), as part of a class, brought this discrimination action alleging that he was wrongfully terminated by Defendant in violation of 18 U.S.C. § 1981.[1] Pending is Defendant's Motion for Summary Judgment with Respect to All Claims Brought by Walter Taylor (Doc. No. 111). Taylor has responded (Doc. No. 139).

## I. Statement of Facts

Plaintiff, who began working for Defendant in July 1966, argues that he was wrongly terminated from Defendant's packaging department on December 27, 2002 because of his race. Defendant maintains that Plaintiff was dismissed for violating its progressive discipline policy.

Defendant annually gave its employees performance evaluations. Employees in packaging are required to meet a minimum 95% efficiency standard, measured bi-weekly.[2] Certain tasks are performed individually and other tasks are performed in groups.[3] Individuals and the groups are

---

[1]Taylor's Title VII and Age Discrimination allegations were previously dismissed by Order (Doc. No. 23) entered April 27, 2005, as untimely. Only his race claims remain.

[2]Doc. No. 113-1.

[3]*Id.*

expected to meet the 95% efficiency standard.[4] If the group falls below 95%, each employee in the group will receive the same rating, and each will be warned based on individual history.[5]

Supervisors are encouraged to provide constructive criticism called "informatives" before issuing a formal written warning.[6] Defendant describes the "informatives" as non-disciplinary coaching tools used to notify employees of job-related problems, including, but not limited, to issues of attendance and productivity.[7] After repeated low efficiency ratings, a supervisor may issue a written warning.[8]

In August 2001, Taylor's supervisor, Helen McCoy ("McCoy"), an African-American female, gave him a "needs improvement" on his ability to cooperate. McCoy gave Taylor the same rating in August 2002. In his reviews, McCoy explained that Taylor made "offensive statements" and created a "hostile work environment." However, Taylor contends that McCoy was "highly critical" of him.

On May 20, 2002, Taylor received a final written warning for making threatening statements to a co-worker. Human Resource Manager Frank Richardson ("Richardson") investigated the accusation and determined it was corroborated by several witnesses. Richardson gave Taylor a final written warning and told him that he would be fired if he did not receive professional counseling.[9]

On September 7, 2001, Packaging Department Supervisor Julie Wakefield ("Wakefield"), a Caucasian female, gave Taylor an informative notifying him of a 55% efficiency rating for August

---

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.*

[9]Doc. No. 113-3.

20, 2001 to September 2, 2001.[10] Taylor was told that "if improvement is not made he could be subject to further disciplinary action according to the company policy and the warning system."[11] Taylor did not challenge the rating.

Taylor was given a follow-up informative on October 2, 2001, noting that his efficiency had improved to 95% for September 10, 2001 to September 23, 2001.[12] He "was encouraged to continue this improvement and continue to work toward 100% efficiency."[13]

On October 16, 2002, Taylor was given a third informative, but this time his efficiency level had fallen to 91% for September 16, 2002 to September 29, 2002.[14] Taylor was told "if improvement is not made, he could be subject to further disciplinary action according to Company policy and the warning system."[15] This efficiency rating was performed by Packaging Department Supervisor Mark Newbill ("Newbill"), an African-American.[16] Newbill also performed the follow-up informative rating, in which Taylor received a 109% efficiency rating for October 8, 2002 to November 10, 2002.[17]

---

[10]Doc. No. 113-1.

[11]Doc. No. 113-4.

[12]Doc. No. 113-1.

[13]Doc. No. 113-4.

[14]Doc. No. 113-1.

[15]*Id.*

[16]Doc. No.113-1.

[17]*Id.*

In December 2002, Taylor received another informative with a 89% efficiency rating for December 2, 2002 to December 15, 2002.[18] On December 18, 2002, Assistant Manager Tommy Baker, an African-American,[19] and Newbill recommended to Richardson that Taylor be given a written warning for his continued failure to meet minimum efficiency standards.[20] The recommendation was accepted and issued that same day.[21] In the warning, Taylor was told that he had received an efficiency rating of 89% and that if he did not meet required efficiency levels, he "could be subject to further disciplinary action according to company policy."[22]

Defendant's progressive discipline policy provides that if an employee receives any written discipline while on an active final warning, the employee will be discharged.[23] Warnings are in effect for one year from the date issued.[24] Because Taylor was already on a final warning, the December 18, 2002 warning resulted in his termination. Taylor filed a charge of discrimination with the EEOC on November 8, 2003.[25]

---

[18]*Id*.

[19]Doc. No. 113-2.

[20]Doc. No. 113-1.

[21]*Id*.

[22]*Id*.

[23]Doc. No. 113-4.

[24]*Id*.

[25]Doc. No. 139-5.

## II. Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[26] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[27]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[28] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[29] This Court must view the facts in the light most favorable to the party opposing the motion.[30] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that

---

[26]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[27]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[28]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[29]*Id.* at 728.

[30]*Id.* at 727-28.

> there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[31]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[32]

**III. Analysis**

Defendant maintains that Plaintiff was fired under its discipline policy for receiving a written warning for failure to meet production standards while already on a final warning for threatening a co-worker. Defendant argues that Taylor cannot establish a *prima facie* showing of discrimination because he was not meeting its legitimate expectations at the time of his dismissal.

The applicable analysis was established in *McDonnell Douglas Corp. v. Green*, [33] and involves a burden-shifting framework.[34] "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [his] burden of establishing a *prima facie* case of employment discrimination. A minimal evidentiary showing will satisfy this burden of production."[35] Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action."[36] If the employer meets its burden, "the presumption of discrimination disappears, requiring the plaintiff to

---

[31]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[32]*Anderson*, 477 U.S. at 248.

[33]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973).

[34]*Davis v. KARK-TV, Inc*., 421 F.3d 699, 704 (8th Cir. 2005).

[35]*Id*.

[36]*Id*. (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)).

prove that the proffered justification is merely a pretext for discrimination."[37] The plaintiff has the burden of persuasion at all times.[38]

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[39] A minimal evidentiary showing will satisfy this burden of production.[40]

Defendant argues that Plaintiff could not get along with others and was not meeting minimum production standards; therefore, he was not meeting Defendant's legitimate expectations. Taylor admits that he received several written warnings due to his difficulty getting along with his co-workers.[41] Taylor was formally warned for making threatening statements to a co-worker in May 2002. Then, just seven months later, Taylor was terminated because he could not meet minimum efficiency standards. The efficiency warnings were initiated by Baker and Newbill, who are both African-American.

The Eighth Circuit has held that insubordination and violation of company policy are legitimate reasons for termination and evidence that an employee is not meeting his employer's expectations.[42] Taylor's failure to respond to Defendant's progressive discipline evidences that he

---

[37]*Id*.

[38]*Id*.

[39]*McDonnell Douglas*, 411 U.S. at 802-03; *Davis*, 421 F.3d at 703.

[40]*Id*.

[41]Doc. No. 113-2, p. 19.

[42]*See e.g.*, *Whitley v. Peer Review Systems, Inc.*, 221 F.3d 1053 (8th Cir. 2000).

was not meeting its legitimate expectations.[43] For these reasons, Plaintiff cannot meet even the second prong of his *prima facie* case.

Moreover, Plaintiff has not pointed to a single similarly situated employee who is a member of another class that was treated differently. The test to determine whether employees are "similarly situated" to warrant a comparison is a "rigorous" one.[44] "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."[45] In this case, Plaintiff admits that Defendant's progressive discipline policy was applied to both African-American and white employees equally.[46]

There is no evidence that Plaintiff's termination was because of his race.

## IV. Conclusion

Viewing all facts in the light most favorable to Plaintiff, no genuine issue of material fact remains to be tried. Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 8th day of February, 2007.

/s /Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[43]*See e.g., Jackson v. Flint Ink North American Corp.*, 370 F.3d 791 (8th Cir. 2004).

[44]*Id.*; *see also Equal Employment Opportunity Commission v. Kohler Co.,* 335 F.3d 766, 775 (8th Cir. 2003).

[45]*Id*. at 776.

[46]Doc. No. 113-3, p. 22.