**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

ANDREW BELL, ET AL.                                          PLAINTIFFS

v.                              3:04CV00303-WRW

AMERICAN GREETINGS CORP.                                     DEFENDANT

<u>ORDER</u>

On August 31, 2004, Plaintiff Constance Swanigan ("Swanigan"), as part of a proposed class, brought this discrimination action alleging that she was wrongfully terminated by Defendant in violation of 18 U.S.C. § 1981.[1]  Pending is Defendant's Motion for Summary Judgment with Respect to All Claims Brought by Constance Swanigan (Doc. No. 114).  Swanigan has responded (Doc. No. 135).

I.      **Statement of Facts**

Plaintiff, who began working for Defendant in August 1999, argues that she was wrongly terminated on October 19, 2001 because of her race.  Defendant maintains that Plaintiff was dismissed for excessive absenteeism in violation of company policy.

On May 19, 2001, Swanigan was given an initial written warning for disrupting work.[2] Then, on August 28, 2001, Human Resource Manager Frank Richardson ("Richardson"), a white male, gave Swanigan a final written warning for using vulgar and offensive language towards her co-workers and for again disrupting the workplace.[3]  Defendant's progressive discipline policy

_____

[1]Doc. No. 23 - Order dismissing Swanigan's Title VII race and sex discrimination allegations as untimely.  Only her § 1981 race claim remains.

[2]Doc. No. 116-1.

[3]Doc. No. 116-4 at 16. *See also*, Doc. No. 135-3 at 15.

provides that if an employee receives any written discipline while on an active final warning, the employee will be discharged.[4]  Warnings are in effect for one year from the date issued.[5]

Swanigan's shift supervisor Doris Windmon ("Windmon"), an African-American female, was charged with notifying the department secretary if an employee is absent.[6]  According to Defendant's attendance records, Swanigan missed work nine times during the six months before her termination.[7]  Swanigan maintains that some of her absences were due to doctor's visits.  In particular, Swanigan had a worker's compensation related doctor's appointment scheduled for October 17, 2001.[8]  However, Defendant maintains, and Swanigan does not dispute, that the appointment was scheduled for the morning so that it would not conflict with Swanigan's second-shift schedule.[9]  Swanigan could not recall how many absences she had before her termination, but she thought it was under five.[10]  Swanigan maintains that she logged her absences on a calendar, but she could not produce either the calendar or any evidence documenting her absences.[11]

---

[4]Doc. No. 135-5 at 24.

[5]*Id.*

[6]Doc. No. 116-4 at 2, 10.

[7]Doc. No. 116-4 (May 22-23, July 30-31, September 5-6, October 11-15, and October 17-18).  Doc. No. 116-4 indicates that Swanigan may have also missed work on September 10-11, 2001.

[8]Doc. No. 116-1.

[9]*Id.*

[10]Doc. No. 135-3 at 51-2.

[11]*Id.*

Defendant's attendance policy states that employees will face termination if they accrue more than five unexcused absences in a six-month period.[12]   An exception exists, if an employee is absent to attend a doctor's appointment made by the company for treatment for a worker's compensation injury.[13]   Defendant applies the attendance policy equally to all employees.[14]

The attendance policy is included in Defendant's employee handbook, which is distributed to all employees.[15]  Swanigan admits that she received a copy of the handbook, read, and understood the attendance policy.[16]

Because Swanigan already had a written final warning, when Richardson became aware of Swanigan's absences, he made the decision to fire her.[17]  Windmon informed Swanigan that she had been fired and explained that it was because of her excessive absences.

Swanigan filed a charge of discrimination with the EEOC and was sent a Right to Sue notification on February 4, 2003.[18]

## II.   Standard of Review

---

[12]Doc. No. 135-5, p. 26.  Doris Windmon's affidavit asserts that the policy only allows six absences, whether excused or unexcused, in any six month period. (Doc. No. 116-4).

[13]Doc. No. 135-5 (Time off work for Vacation, Paid Leave, Funeral Leave, Jury Duty, Holidays, Military Duty, Company Convenience and Medical Leave for Worker's Compensation incidents are non-chargeable absences under the warning system) (emphasis omitted).

[14]Doc. No. 116-4 at 4.

[15]Doc. No. 116-4 at 3.

[16]*Id*. at 4.

[17]*Id*. at 11.

[18]Doc. No. 1, p. 76.

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[19]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[20]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[21]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[22]  This Court must view the facts in the light most favorable to the party opposing the motion.[23]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[19]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[20]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[21]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[22]*Id.* at 728.

[23]*Id.* at 727-28.

showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[24]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[25]

## III.    Analysis

Defendant maintains that Swanigan was fired under its discipline policy for excessive absenteeism during a time when she was already on a final warning.  Defendant argues that Swanigan cannot establish a *prima facie* showing of discrimination because she was not meeting its legitimate expectations at the time of her dismissal.

The applicable analysis was established in *McDonnell Douglas Corp. v. Green*, [26] and involves a burden-shifting framework.[27]  "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a *prima facie* case of employment discrimination.  A minimal evidentiary showing will satisfy this burden of production."[28]  Once a plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate "a legitimate, non-discriminatory reason for its adverse employment action."[29] If the employer meets its burden, "the presumption of discrimination disappears, requiring the

---

[24]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[25]*Anderson*, 477 U.S. at 248.

[26]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973).

[27]*Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005).

[28]*Id.*

[29]*Id.* (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994)).

plaintiff to prove that the proffered justification is merely a pretext for discrimination."[30]   The plaintiff has the burden of persuasion at all times.[31]

To establish a *prima facie* case of discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[32]   A minimal evidentiary showing will satisfy this burden of production.[33]

Defendant argues that Swanigan was not meeting its legitimate expectations because of her inability to get along with co-workers and because of her continued absences.  Swanigan cannot remember how many times she was gone, but believes that it wasn't nine times.[34]  Swanigan argues that her October 17, 2001 absence for a pre-approved doctor's appointment should not have been considered as an absence. Whether Swanigan was required to report to work after her appointment on October 17 is irrelevant because, as of that day, Defendant could document eight other absences, which is well in excess of the five or six[35] the company allowed.  The Eighth Circuit has held that excessive absences qualify as a legitimate, non-discriminatory reason for termination.[36]   Swanigan

---

[30]*Id.*

[31]*Id.*

[32]*McDonnell Douglas*,  411 U.S. at 802-03; *Davis*, 421 F.3d at 703.

[33]*Id.*

[34]Doc. No. 116-2 at 10.

[35]*See* note 12.

[36]*See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1037 (8th Cir. 2005) (holding that termination for excessive absences constituted a legitimate, non-discriminatory reason for

identifies two similarly situated employees, Judy Nations and a Tammy, who she believes were not fired for absences due to doctor's appointments.[37]   The test to determine whether employees are "similarly situated" to warrant a comparison is a "rigorous" one.[38]   "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."[39]

Neither Swanigan nor Defendant have been able to locate a current or former employee named Judy Nations and cannot identify "Tammy."  Moreover, Swanigan admits that she has no knowledge of either women's attendance records, doctor's appointments, or whether they ever missed work for a doctor's visit.[40]  Swanigan has not met her burden to produce "specific, tangible evidence that employees who were similarly situated in all respects to her received different treatment."[41]  For these reasons, Plaintiff has not evidenced a *prima facie* case of discrimination.

## IV.    Conclusion

---

adverse action); *Robinson v. Barnes Hosp.*, 210 F.3d 379 (8th Cir. 2000) (Plaintiff's repeated violations of the attendance policy established a valid race-neutral basis for discharge).

[37]Doc. No. 135-3, p. 77.

[38]*Id.*; *see also Equal Employment Opportunity Commission v. Kohler Co.*, 335 F.3d 766, 775 (8th Cir. 2003) (applying *McDonnell Douglas* to Title VII claim).

[39]*Id.* at 776.

[40]*Fuller v. Alliant Energy Corp. Serv., Inc.*, 456 F. Supp. 2d 1044, 1069 (N.D. Iowa 2006) (finding Caucasian employees were not similarly situated because plaintiff lacked any evidence of their respective attendance records).

[41]*Gammon v. Flowers*, No. 06-1829, 2006 WL 3372964, *1 (8th Cir. November 22, 2006).

Viewing all facts in the light most favorable to Swanigan, no genuine issue of material fact remains to be tried.  Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 12th day of February, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE