**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**ANDREW BELL, ET AL.**                                                                          **PLAINTIFFS**

**v.**                                           **NO. 3:04CV00303-WRW**

**AMERICAN GREETINGS CORP.**                                                            **DEFENDANT**

**ORDER**

Plaintiffs brought suit against their employer, American Greetings Corporation, alleging that they were discriminated against based on their race, sex, and age in violation of Title XII, 42 U.S.C. § 1981, Arkansas Civil Rights Act ("ACRA"),[1] and the Age Discrimination in Employment Act ("ADEA").[2] The sex discrimination claims and several of the Plaintiffs have since been dismissed. Pending is Defendant's Motion for Summary Judgment on the remaining claims and remaining Plaintiffs (Doc. No. 127).

**I.   Background**[3]

Defendant American Greetings Corporation is a foreign corporation organized under the laws of the state of Ohio and is qualified to do business in the state of Arkansas. Defendant's principal place of business is Osceola, Arkansas, where it manufactures and distributes seasonal greeting cards and related products. Approximately 1,250 individuals are employed at the Osceola facility.

Plaintiffs are all citizens and residents of the state of Arkansas; and are former employees of American Greetings' Osceola facility. Due to the seasonal nature of manufacturing at

---

[1] Ark. Code Ann. § 16-123-101.

[2] 29 U.S.C. §§ 621-634.

[3] Background taken from an earlier declaratory judgment order (Doc. No. 23).

Defendant's Osceola plant, the company created something called "company convenience." This is a voluntary layoff that correlates with down swings in production, which allows Defendant to maintain its trained work force and allows its employees to draw unemployment benefits for a maximum of 8-10 weeks although they are technically still employed by Defendant. At any time during company convenience, Defendant can call an employee to help with production for a day or more. Defendant provides the Arkansas Employment Security Division ("AESD") with a list of employees taking company convenience along with the tentative dates of layoff. However, if an employee is called to work during company convenience time, it is the employee's responsibility to notify the AESD.

In 2002, American Greetings began dismissing a large group of its hourly employees. Approximately 120 out of 1,100 employees were dismissed. Defendant asserts that these dismissals were the result of a thorough investigation on its part -- after prompting by the AESD -- of employees improperly claiming unemployment compensation for periods in which they were actually working. Plaintiffs allege that the investigation was a pretext -- a mask for dismissals driven by illegal discrimination on the basis of sex, race, and disability. Moreover, Plaintiffs suggest that the timing of the terminations for alleged unemployment fraud was suspicious, coming just months after Defendant announced that it would begin a "restructuring" of the plant.

In March 2002, Defendant discovered that one of its hourly employees had repeatedly failed to report all of her earnings to the AESD when filing for unemployment benefits. After the discovery, Defendant contacted its third party administrator for unemployment claims, and learned that he had not been monitoring unemployment claims for under reporting. Basically, Defendant

and the AESD discovered that employees were fraudulently claiming unemployment benefits while simultaneously working for Defendant.

The discovery prompted Defendant to investigate all 1,180 employees who had taken company convenience or non-scheduled time off during the previous three years. Defendant maintains that when under-reporting was discovered, the employee was fired regardless of length of service, race, age, or sex. Defendant further maintains that it fired these employees in compliance with its written policy prohibiting misrepresentation, dishonesty, and unauthorized altering or falsification of company records.

Of the 122 employees terminated, four employees were able to prove the under-reporting was caused by clerical errors made by Defendant, and they were reinstated. Every termination was conducted by Frank Richardson, a white male, who worked for Defendant as a human resource manager.

In an April 27, 2005 Order, the sex discrimination claims of Group I Plaintiffs,[4] Plaintiff Michael Fletcher's Title VII claim, and the Title VII and ADEA claims of all Group II and Group III Plaintiffs were dismissed.[5] A September 11, 2006 Order dismissed Plaintiffs LaKresha Johnson and Kim Whitted for failing to appear for depositions.[6] Plaintiffs Sherry Wilson, Veronica Bogan, and William Guy were similarly dismissed on October 3, 2006.[7] Summary judgment has been

---

[4] The Complaint divides Plaintiffs into three groups labeled I, II, and III. It appears that Plaintiffs in Groups II and III did not timely file their EEOC charges of discrimination.

[5] Doc. No. 23.

[6] Doc. No. 75.

[7] Doc. No. 79.

entered against two individual Plaintiffs, Constance Swanigan[8] and Walter Taylor.[9] The remaining claims are as follows: Group I has ADEA, ACRA, Title VII, and § 1981; Group II and III have § 1981.

## II.   Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[10] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[11]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[12] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[13] This Court must view the facts in the light most favorable to the party opposing the motion.[14] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

---

[8] Doc. No. 161.

[9] Doc. No. 152.

[10] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[12] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[13] *Id.* at 728.

[14] *Id.* at 727-28.

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[15]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[16]

## III.   Analysis

### A.   Procedure

Plaintiffs allege race and age claims under ACRA. Because ACRA does not protect against age discrimination claims,[17] Plaintiffs' ACRA age discrimination claims are DISMISSED.

Defendant next argues that Group II and III Plaintiffs' ACRA claims are timed barred. ACRA requires an employee to bring a suit within one year of the alleged discrimination, or within ninety days of receipt of the notice of right to sue from the EEOC, whichever is later.[18] All of the Plaintiffs in Group II and III were fired between May and December 2002; however, this lawsuit was not filed until August 31, 2004. Therefore, Plaintiffs had until May 2004 at the latest to timely

---

[15] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[16] *Anderson*, 477 U.S. at 248.

[17] *Morrow v. City of Jacksonville*, 941 F. Supp. 816, 826 (W.D. Ark. 1996) ("The list of protected classes [under ACRA] does not include those over 40 or any other age group.") (citing Ark. Code Ann. § 16-123-105).

[18] Ark. Code Ann. § 16-123-107.

file suit.[19] Accordingly, Group II and III Plaintiffs' ACRA claims are DISMISSED as untimely.

**B.     Discrimination**

Plaintiffs allege that they were terminated on the basis of age in violation of ADEA, on the basis of race in violation of § 1981 and ACRA, and on the basis of age and race in violation of Title VII. Although the *McDonnell Douglas*[20] method of analysis arose in the context of Title VII, its burden-shifting framework is often applied to cases arising under the ADEA and § 1981.[21] The burdens of proof for claims brought under Title VII and § 1981 are identical.[22] Likewise, claims under ACRA receive the same analysis as Title VII claims.[23] Therefore, I will consider the Title VII claims as including the § 1981, ACRA, and ADEA claims.

Defendant argues that (1) Plaintiffs cannot establish a *prima facie* case of either race or age discrimination, and (2) even if Plaintiffs were able to make a *prima facie* showing, Defendant had a legitimate, non-discriminatory reason for their terminations. Defendant notes that Plaintiffs concede that they have no direct evidence of discrimination, and that no one with Defendant ever suggested that Plaintiffs were fired because of their race or age.

---

[19] Doc. No. 128, pp. 20-1.

[20] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[21] *Garner v. Arvin Insus., Inc.*, 77 F.3d 255, 257 (8th Cir. 1996) (ADEA); *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682-83 (8th Cir. 1996) (Title VII and § 1981 ); *Richmond v. Board of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992) (ADEA and § 1981 ).

[22] *See Roark v. City of Hazen*, 189 F.3d 758, 761 (8th Cir. 1999).

[23] Ark. Code Ann. § 16-123-105 (Supp. 2001).

  **1.**  **Age**

The ADEA forbids employers from taking adverse employment actions against employees because of their age.[24]  Plaintiffs can establish a *prima facie* case by showing that (1) they are at least 40 years of age; (2) they are qualified for the positions; (3) they were terminated; and (4) they were replaced by someone substantially younger.[25]  Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, and then back to plaintiff to show that the defendant's reason was pretextual.[26]  The burden of production rests with Plaintiffs.[27]

Plaintiffs do not meet their *prima facie* burden because they do know if they were replaced or if so, the age of the individual who replaced them.  Instead, Plaintiffs attempt to use statistical data to show a disparate impact on employees over 40 years of age.  However, before Defendant terminated any of the Plaintiffs for fraud, 54.8% of the hourly workforce was 40 years of age or older.  After the last termination, 56.5% of the hourly workforce was 40 years of age or older.  Moreover, of the 122 employees fired for unemployment fraud, only 38.5% were 40 years old or older.  Plaintiffs failed to show they are qualified for the position because they were shown to have engaged in dishonesty and have disqualified themselves.

---

[24]29 U.S.C. § 623(a)(1).

[25]*Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005).

[26]*McDonnell Douglas*, 411 U.S at 802.

[27]*Pope v. ESA Serv., Inc.*, 406 F.3d 1001, 1006.

**2**.     **Race**

Under *McDonnell Douglas*, Plaintiffs can establish a *prima facie* case of discrimination by showing that: 1) they are members of a protected group; 2) they were meeting Defendant's legitimate expectations; 3) they were discharged; and 4) the discharge occurred in circumstances that give rise to an inference of unlawful discrimination.

Plaintiffs, either because of their age or race, are members of a protected group.  However, they have not shown that they were meeting Defendant's legitimate work expectations because they were discharged for committing unemployment fraud. Rather than contest that the allegations of unemployment fraud, Plaintiffs' deposition testimony reveals that they simply cannot recall when they worked, had earnings, claimed, or received unemployment benefits during the weeks in question.[28]  Defendant relied on attendance records and payroll records to determine whether an employee was under-reporting unemployment wages. Every employee who was terminated had an opportunity to refute the fraud; however, only four employees did so.  All four employees were rehired.   When deposed, each Plaintiff  stated that they understood the AESD claims process; therefore, Defendant determined that their misuse of the process was intentional.   Based on this, Defendant maintains that it had a good faith belief, after a thorough investigation, that the Plaintiffs deliberately under-reported their wages to obtain AESD benefits.

Moreover, Plaintiffs have not been able to point to one similarly situated white employee or employee under the age of 40 who engaged in unemployment fraud and was treated differently.  In fact, not a single Plaintiff had personal knowledge of any employee who committed fraud during the three year investigative window who was not terminated for that fraud.

---

[28]Defendant's Ex. 127, pp. 12-13.

Defendant maintains that in April 2002, before the first termination, 41.5% of its hourly employees were African-American. In comparison to October 2002, after the final termination, 39.7% of its hourly employees were African-American -- only a 1.8% decline, which Defendant alleges is not statistically significant.[29]

Plaintiffs point to areas in Defendants company convenience policy where mistakes in reporting can be made. However, because federal courts "do not sit as a super-personnel department that second guess business decisions,"[30] Defendant's decision to terminate any employee who committed unemployment fraud, regardless of intent, cannot be questioned.

**IV.   Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiffs' Motion in Limine (Doc. No. 92), Motion for Order Directing Non-Jury Trial (Doc. No. 167), and Motion for Order to Interrogate Jury Commissioner (Doc. No. 169) are DENIED as MOOT. Defendant's Motion for Sanctions (Doc. No. 89) is DENIED.

IT IS SO ORDERED this 29th day of May, 2007.

/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE

---

[29] See *Stidham v. Minn. Mining & Mfg. Inc.*, 399 F.3d 935, 938 (8th Cir. 2003) (holding a 4% decline in workforce over forty is not statistically significant.).

[30] *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1036 (8th Cir. 2005).